**IN THE UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

-------------------------------------------------------- x
                      :

**In re:**                      :   **Case No. 06-25454 (MBM)**
                      :

**LE-NATURE'S INC., et al.**     :   **Chapter 11**
                      :

**Debtors.**                   :   **Jointly Administered**
                      :
-------------------------------------------------------- x

### OPPOSITION OF BDO SEIDMAN, LLP TO THE LIQUIDATION TRUSTEE'S MOTION PURPORTEDLY TO ENFORCE CONFIRMATION ORDER AND FOR CONTEMPT

BDO Seidman, LLP ("BDO"), through its undersigned counsel, hereby submits its opposition to the motion filed by Marc S. Kirschner, in his capacity as the Liquidation Trustee of the Le-Nature's Liquidation Trust (the "Trustee") purportedly to "enforce" this Court's Order, dated July 8, 2008, Confirming the Second Amended Joint Chapter 11 Plan of Liquidation for Le-Nature's, Inc. (the "Confirmation Order"), and for imposition of civil contempt sanctions, regarding an action BDO filed in the United States District Court for the Southern District of New York (the "District Court Action"). BDO respectfully represents as follows:

### Preliminary Statement

1.     This motion is about BDO's effort to consolidate the parties' disputes in the Western District of Pennsylvania, and the Trustee's inexplicable efforts to block such consolidation.

2.     The Trustee commenced an arbitration against BDO outside of these bankruptcy proceedings, and outside of this District, complaining of BDO's alleged failure to uncover the Le-Nature's fraud. In defense, BDO filed the District Court action asserting that Le-Nature's had failed to disclose to BDO during the client acceptance process that the company was a fraudulent enterprise.

3.     The Judicial Panel on Multidistrict Litigation (the "JPML") has consolidated all existing federal matters relating to the Le-Nature's fraud in multi-district litigation proceedings (the "MDL") pending in Pittsburgh before Judge David Cercone. Both the Trustee and BDO are already parties to actions that are included in the MDL.

4.     At BDO's request, the JPML has recently issued an order conditionally transferring the federal action that is the subject of this motion to the MDL. Through the present motion, the Trustee is seeking to essentially block that transfer, and to thereby prevent the consolidation of this dispute with the Pittsburgh MDL. Thus, notwithstanding the Trustee's allegation in his motion that he is being subjected to a "distraction," it is BDO that is trying to bring efficiencies to this dispute by consolidating it in the district where these bankruptcy proceedings are pending, where the United States Attorney's criminal investigation is pending, and where there already exists an MDL involving both BDO and the Trustee.

5.     BDO filed the District Court Action in good faith, not in violation of the Confirmation Order, and the Trustee's motion  is wholly without merit. A core allegation of the District Court Action is that BDO has no adequate remedy at law and is thus entitled to equitable relief – yet the Trustee's motion is based entirely on the summary assumption that BDO could alternatively be satisfied through payment of money damages. In reality this is an attempt by the Trustee to circumvent the District Court Action and avoid having to seek to dismiss that case.

6.     In any event, the filing of the District Court Action was not barred by the Confirmation Order. In the District Court Action, BDO seeks solely equitable relief which presupposes the absence of alternative monetary relief. Because the Plan and Confirmation Order adopt the Bankruptcy Code's definition of "claim," equitable claims like those asserted by BDO in the District Court are subject to the terms of the plan injunction only if they could be

remedied by monetary damages as an alternative to the equitable relief requested. Here, the harm alleged by BDO could <u>not</u> be remedied by a monetary award. In apparent recognition of the weakness of his case, the Trustee never even attempts to explain how monetary damages are or were an alternative for BDO but merely relies on generic language in cases which actually support BDO's position. The causes of action asserted in the District Court Action do not constitute "claims."

7.     BDO's complaint seeks only equitable relief in the form of rescission, cancellation, estoppel and injunctive relief, which relief by definition could not be granted if the harm to BDO could be remedied by money damages. At its essence, BDO's District Court Action seeks to unwind its relationship with Le-Nature's, because, as is now undisputed, the management of Le-Nature's deceived BDO when BDO was deciding whether to accept Le-Nature's as a client.

8.     This is a classic appeal to equity. BDO could not, at any time, have asserted any kind of "claim" seeking monetary damages for the harms which it seeks to remedy in the District Court Action. The harm to BDO, from the agreement created with Le Nature's through deceit, only manifested when the Trustee filed his post-confirmation arbitration demand against BDO under the contract. It is therefore perhaps not surprising that the Trustee's motion fails to explain how monetary damages could address the specific harms which BDO suffered. Moreover, the Trustee cites a grand total of three cases in support of his argument that BDO has raised a "claim," and each one of the three cases is either entirely inapplicable or in fact support BDO. (*See* ¶ 35 below)

9.     This Court should decline the Trustee's invitation to interfere with a pending federal action without addressing the merits and to do so in a summary fashion. If this Court

does reach the merits, it should find that BDO has not raised a "claim" barred by the Confirmation Order.  In any event, the Trustee's motion should be denied.

**Background**

**A.     Le-Nature's And The Trustee**

10.     Le-Nature's, a company that manufactured, bottled and distributed non-carbonated beverages, was a Delaware corporation with its principal place of business in Latrobe, Pennsylvania.  Le-Nature's was placed in involuntary bankruptcy in November of 2006. *In re Le-Nature's, Inc., et al.,* Case No. 06-25454 (W.D. Pa.).

11.     By order dated July 8, 2008, this Court entered the Confirmation Order and confirmed the Second Amended Joint Plan of Liquidation, dated April 9, 2008, of Le-Nature's and its affiliates.  A true and correct copy of relevant pages of the Confirmation Order are attached hereto as Exhibit A.   The Le-Nature's Liquidation Trust was created as part of the Le-Nature's liquidation plan, and all of Le-Nature's assets, rights and claims were transferred to the Trust.

**B.     BDO Accepts Le-Nature's As A Client**

12.     BDO is a New York limited liability partnership that provides accounting, tax, assurance and consulting services.  As set forth in the BDO complaint at issue on this motion (Motion Ex. D), in January of 2004, Le-Nature's asked BDO to replace Ernst & Young as its outside auditors.  Before accepting the engagement, BDO conducted a series of interviews with Le-Nature's executives and directors to obtain information on which it would rely in determining whether it would accept such an engagement.  A BDO partner, Saul Reibstein, met in Latrobe, Pennsylvania with Le-Nature's CEO, as well as its Chief Financial Officer and Chief Revenue Officer.  The BDO partner also spoke with two of the company's outside directors.  Each one of these executives and outside directors confirmed that Le-Nature's was an honestly run

corporation using accurate financial records, that there were no management integrity issues relating to Le-Nature's management and that there was no reason for BDO not to accept the engagement.

13.     BDO had in place an extensive set of procedures governing the acceptance of new clients.  A key purpose of these procedures was to help ensure that BDO would only accept new clients that would provide BDO with honest and accurate financial information.  Reibstein's discussions with Le-Nature's executives and outside directors were all part of this client acceptance process.  After carefully reviewing the representations made by the management and outside directors of Le-Nature's, BDO decided to accept Le-Nature's as a client.

14.     After making the decision to accept Le-Nature's as a client, BDO entered into three Engagement Letters with Le-Nature's, dated March 1, 2004, November 22, 2004, and November 4, 2005, respectively.  (Motion Ex. A)  Pursuant to the Engagement Letters, BDO issued three audit reports for Le-Nature's, for the years ending 2003, 2004 and 2005.

**C.     Le-Nature's Senior Management Fails To Disclose That Le-Nature's Is A Fraudulent Enterprise**

15.     As noted, both Le-Nature's senior management and its outside directors confirmed to BDO during the client acceptance process that BDO should have no concerns about the integrity of Le-Nature's management.  However, according to the Trustee himself, Le-Nature's and its entire management were, as of the date of the first Engagement Letter, engaged in a pervasively fraudulent enterprise, a fact that was never disclosed to BDO during the client acceptance process or at the time of the execution of the Engagement Letters by the parties.

16.     The Trustee has had unfettered access to Le-Nature's documents, and professes to have been able to interview numerous potential witnesses.  He has filed an action in Pennsylvania federal court against all of Le-Nature's former senior management, among many

other parties. *Kirschner v. Wachovia Capital Markets, LLC, et al.*, No. 08 Civ. 1518 (W.D. Pa.) (the "Wachovia Complaint," a true and correct copy of which is attached hereto as Exhibit B). In his Wachovia Complaint, the Trustee alleges that Le-Nature's was a thoroughly corrupt enterprise that deceived dozens, if not hundreds, of auditors, lawyers, bankers, lenders, and investors. Specifically, the Trustee asserts that Gregory Podlucky, the former CEO of Le-Nature's, "cooked the books" of Le-Nature's, inflating its sales and then obtaining financing based on the inflated sales. The Trustee alleges that every single member of Le-Nature's senior management was a party to the fraudulent scheme, including Le-Nature's CEO, CFO, COO, Executive Vice President, and Accounting Manager. The Trustee further alleges that the Le-Nature's fraud began well before BDO agreed to accept Le-Nature's as a client. (Wachovia Complaint ¶¶ 2, 53-55, 57, 58, 238)

17. <u>None</u> of this was disclosed to BDO during its client acceptance process.

18. Thus, if the Trustee's allegations are true, BDO was another of the victims of a massive fraud conducted by Le-Nature's management. Had Le-Nature's management and outside directors not omitted to inform BDO of the Le-Nature's fraudulent scheme, and had instead disclosed that Le-Nature's was a thoroughly corrupt and criminal enterprise, BDO would never have even considered accepting Le-Nature's as a client.

**D. The Arbitration**

19. The Engagement Letters provide for disputes between BDO and Le-Nature's to be resolved by arbitration, including disputes about the "validity or enforceability" of the Letters. However, the Engagement Letters further specify that, "the arbitration panel shall have no authority to award non-monetary or equitable relief . . . ." (Motion Ex. A)

20. Post-confirmation, the Trustee filed an arbitration demand, sited in Philadelphia, with the American Arbitration Association, AAA Case 14 107 Y 01728 08 (the "Arbitration").

No substantive proceedings have occurred in the Arbitration. Indeed, as of the date of this opposition, a full arbitration panel has not yet even been appointed.

21. While the Arbitration proceedings are confidential, the Trustee has publicly stated that it believes BDO's liability to be "at least $50 million." (Motion ¶ 15) Notwithstanding this massive amount of damages, and the enormity of the Le-Nature's fraud, the Trustee declares in this Motion that he believes that the Arbitration can be "conducted and concluded expeditiously" and that discovery in the Arbitration will be limited. (Johnson Aff. ¶¶ 3, 15)

**E.   The Multi-District Litigation**

22. The Le-Nature's bankruptcy has spawned a host of other commercial actions. By Order dated April 9, 2009, the JPML transferred and consolidated the federal actions involving Le-Nature's in the Western District of Pennsylvania. *In re: Le-Nature's Inc. Commercial Litigation*, -- F.Supp.2d -- , 2009 WL 971493, MDL No. 2021 (JPML 2009) (*See* April 9, 2009 Transfer Order, a true and correct copy of which is attached hereto as Exhibit C). The MDL has been assigned to Judge David Cercone of the Western District.

23. In its Order, the seven judges that comprised the JPML unanimously held that MDL treatment would:

> [S]erve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation. Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel, and the judiciary.
> …
> All actions arise out of Le-Nature's alleged fraud, which was a complex web of deceit and payoffs. [C]entralization … will enable one judge to streamline pretrial proceedings and make consistent rulings on discovery disputes and dispositive motions.
> …
> We are persuaded that the Western District of Pennsylvania is an appropriate transferee forum for this litigation. Le-Nature's was headquartered in that district, and related bankruptcy and criminal

proceedings are occurring there. Many third party witnesses will likely be found in that district.

*Id.*

24.     Importantly, the United States Attorney for the Western District of Pennsylvania filed a statement with the JPML stating her belief that MDL consolidation is necessary to protect the progress of her criminal investigation of the Le-Nature's fraud, to avoid multiple depositions of key witnesses, and to avoid burdening the grand jury. *See* Interested Party Response of the United States In Support of the Motions to Transfer To the Western District of Pennsylvania, a true and correct copy of which is attached hereto as Exhibit D.

25.     Both the Trustee and BDO are parties to litigations that have been consolidated into the MDL. Specifically, the Trustee's Wachovia Complaint is part of the MDL, and a complaint filed against BDO in Arizona was transferred to the MDL by the JPML. *CIT Group/Equipment Financing, Inc. v. BDO Seidman, LLP*, No. 2:09 Civ. 521.

**F.     The District Court Action**

26.     After BDO and the Trustee engaged in unsuccessful mediation efforts, and immediately after the JPML issued its order establishing the MDL proceedings, BDO filed a federal action against the Trustee in the Southern District of New York. *BDO Seidman, LLP, v. Marc S. Kirschner, in his capacity as the Liquidation Trustee of the Le-Natures Liquidation Trust*, Index No. 09 Civ. 3654 (S.D.N.Y.) (Marrero, J.) (Motion Ex. D). In its complaint in the District Court Action, BDO notes the undisputed fact that Le-Nature's management lied to BDO during the client acceptance process, and that BDO would never have accepted Le-Nature's as a client had it been told the full truth. BDO asserts that the Trustee, who has no rights against BDO greater than Le-Nature's would have had, must, in his actions as a litigant, be held responsible for the bad behavior of the management of Le-Nature's.

27.     In the District Court Action, BDO asserts causes of action for equitable relief, and only for equitable relief, not for monetary damages.  Specifically, BDO asserts four causes of action:  (1) Equitable Rescission, (2) Equitable Cancellation, (3) Equitable Estoppel, and (4) Preliminary and Permanent Injunction.  All of relief that BDO seeks is injunctive in nature: rescinding or cancelling the Engagement Letters, estopping the Trustee from enforcing those Letters, and enjoining the Arbitration.  BDO can only obtain this relief if it is able to demonstrate that it has no adequate remedy at law.

28.     Promptly after filing the District Court Action, BDO filed a "tag-along" notice seeking to transfer that Action to the MDL.  On April 17, 2009, the JPML issued an Order of Conditional Transfer.  *See* April 17, 2009 Conditional Transfer Order, a true and correct copy of which is attached hereto as Exhibit E.  The Conditional Transfer Order states that "[i]t appears that [the District Court Action] involves questions of fact that are common to the actions previously transferred to the Western District of Pennsylvania and assigned to Judge Cercone." Thus, unless the Trustee for some unfathomable reason challenges the Conditional Transfer, both BDO and Kirschner will be able to take advantage of the many efficiencies offered by the MDL consolidation.  Moreover, by Order dated April 20, 2009, the Judge in the District Court Action placed the matter on the Court's "suspense docket" pending resolution of the transfer issue.  *See* April 20, 2009 Order entered in *BDO Seidman v. Kirschner* (S.D.N.Y. 09-3654), a true and correct copy of which is attached hereto as Exhibit F.  Accordingly, there will be no activity in the case until after transfer to Judge Cercone.

**G.     The "Enforcement" Motion**

29.     The Trustee filed this "enforcement" motion on April 16, 2009.  The motion asserts that the District Court Action asserts "claims" within the meaning of Bankruptcy Code Section 101(5), and therefore violates the plan injunction provision of paragraph 22 of the

Confirmation Order. Rather than seeking relief before Judge Cercone in the District Court Action itself, the Trustee instead asks this Court to fine BDO $10,000 for each day that the Action remains pending.

**Argument**

## I. BDO HAS NOT ASSERTED "CLAIMS" IN THE DISTRICT COURT ACTION

30. In its District Court Action, BDO raises only equitable claims and seeks only injunctive relief. The Trustee does not even attempt to explain how the harm BDO alleges could conceivably be remedied by an award of money damages. Further, BDO's causes of action do not turn on a "breach of performance" by Le-Nature's. Finally, BDO could prevail on its causes of action <u>only</u> if it can show that monetary damages would not be sufficient to remedy the harm caused to BDO. For all these reasons, BDO has not raised impermissible "claims" in the District Court Action, and the Trustee's motion must be denied.

### A. BDO's Harm Could Not Be Remedied By A "Payment"

31. Section 22 of the Confirmation Order bars the institution of actions relating to "claims" against the Estate. The term "claims" is defined in the Plan to have the meaning ascribed to the term in Bankruptcy Code Section 101(5). *See* Second Amended Joint Plan of Liquidation attached to the Confirmation Order (Ex. A hereto), at p. 4. That section defines a "claim" as:

> (A) <u>right to payment</u>, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> (B) right to an equitable remedy for <u>breach of performance if such breach gives rise to a right to payment</u>, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

(emphasis added)

32.     It is undisputed that BDO does not in the District Court Action seek any form of "payment."  As to clause "B" of section 101(5), as held by the Third Circuit, "an equitable remedy will 'give rise to a right of payment,' and therefore be deemed a 'claim,' when the payment of monetary damages is an alternative to the equitable remedy."  *In re Ben Franklin Hotel Assoc.*, 186 F.3d 301, 305 (3rd Cir. 1999) (emphasis added).

33.     BDO has alleged four causes of action, for rescission, cancellation, equitable estoppel, and for a preliminary and permanent injunction.  All of these claims are equitable in nature.  The harm suffered by BDO could not be remedied by money damages, and therefore could not give rise to a right of payment.

34.     The Trustee assumes without further elaboration that the harm to BDO could have been remedied by a monetary award, however, the Trustee never attempts to articulate how that could have been done.  Although the Trustee has sought "emergency" relief from this Court, and although he wants this Court to award him $50,000 and attorneys fees, and an additional $10,000 for every day that the District Court Action remains pending, the Trustee has utterly failed to address the heart of this dispute and explain how, if at all, BDO had a "right to payment."  Similarly, the Trustee contends that BDO "waived any claim for relief" by failing to file a proof of claim (thus assuming the fundamental fact in issue) (Motion ¶ 28), yet nowhere explains how BDO could have in fact quantified money damages in a proof of claim relating to its present causes of action.

35.     The Trustee spends only a single paragraph of his motion discussing the standard for determining whether a cause of action was an impermissible "claim," and cites only three cases.  (Motion ¶ 27)  However, those three cases are either inapplicable or in fact support BDO's position:

(1)    In *Rederford v. US Airways, Inc.*, 586 F.Supp.2d 47 (D. R.I. 2008), a terminated employee sought reinstatement. *Id*. at 52-53. The court held that the value to the plaintiff of reinstatement "can be reduced to a quantifiable dollar amount," and therefore the request for reinstatement was a "claim." *Id*. at 53. In contrast, BDO's harm could <u>not</u> be addressed by quantifiable money damages, and the Trustee nowhere asserts the contrary.

(2)    In *In re Ben Franklin Hotel Assoc.*, *supra,* the Third Circuit held that a demand for reinstatement of a partnership interest was not a "claim" because the interest included ownership in a unique, landmark hotel. 186 F.3d at 306-07. That court held that if, as here, the party has no adequate remedy at law, then it has not asserted an "equitable remedy that gives right to payment," and therefore has not asserted an impermissible "claim." *Id.*

(3)    The Trustee's final case, *In re Stylesite Mktg., Inc.,* 253 B.R. 503 (Bankr. S.D.N.Y. 2000), is perhaps most instructive because the Trustee asserts that the case stands for the proposition that a rescission cause of action is always a "claim." The plaintiff in *Stylesite* provided cash and stock to the debtor in exchange for a percentage of the debtor's stock. 253 B.R. at 506-07. The plaintiff later asserted that the debtor had misled the plaintiff as to the soundness of the debtor's business. *Id.* The plaintiff sought a constructive trust on the cash and stock it had provided to the debtor. *Id.* Although a constructive trust was an equitable remedy, a claim for money damages would have "fully satisfied the plaintiff's injury," and therefore the request for a constructive trust was an impermissible "claim." *Id.* at 511. Thus, the case turned on the fact that if the plaintiff had been defrauded, money damages based on the inflated value of the debtor's stock would be a complete remedy for the fraud. Here, in contrast, BDO's requested equitable relief of unwinding its relationship with Le-Nature's and stopping the Arbitration could <u>not</u> be satisfied by money damages, and the Trustee has never explained otherwise.

36.     Thus, the Trustee has cited not a <u>single</u> case that stands for the proposition that the relief BDO is seeking could be addressed by money damages.  Because a payment of money would not be a remedy for the injury BDO has suffered, BDO has not violated the plan's injunction against pursuing "claims."

37.     The Trustee does assert that "[w]hen a right of action includes the availability of both monetary damages or equitable relief as fraudulent inducement does, the assertion of such a right of action constitutes a "claim."  (Motion ¶ 27)  Leaving aside the fact that money damages would not be "available" to remedy BDO's harm, the issue is <u>not</u> whether money damages may be pursued for a particular misconduct, but whether such money damages are an alternative to the equitable remedy itself.  As noted by the court in *Ben Franklin*, *supra*,

> Parties routinely seek both money damages and equitable relief arising from the same alleged wrongful conduct, but that does not mean that one is an "alternative" to the other.  In many cases, prayed-for monetary and equitable relief will serve *entirely distinct remedial purposes*.

*Ben Franklin*, 186 F.3d at 301 (emphasis added); *see also In re Udell*, 18 F.3d 403, 409 (7th Cir. 1994) ("the fact that both remedies are triggered by a single act does not mean that the right to an injunction gives rise to a right of liquidated damages"); *In re Oseen*, 133 B.R. 527, 531 (Bankr. D. Idaho 1991) (holding that equitable relief serves a "markedly different purpose" than damages, and imposition of an injunction will likely not be available except where an award of money damages is inadequate).

38.     BDO's harm could not have been addressed by money damages.  Therefore, BDO has not asserted a "claim," and the Trustee's motion must be denied.

**B.      BDO's Harm Does Not Relate To A "Breach of Performance"**

39.     None of BDO's claims relate to a "breach of performance" within the meaning of the Bankruptcy Code.  In fact, the core of BDO's case is that because of the Le-Nature's fraud,

no valid contract existed between the parties. In no way do BDO's claims relate to an alleged failure by Le-Nature's to perform its obligations. But, a cause of action is within Bankruptcy Code section 101(5)(B) only if it relates to a "breach of performance" by the debtor. The legislative history of Section 101(5) provides that subsection (B) is:

> [I]ntended to cause the liquidation or estimation of contingent rights of payment for which there may be an *alternative* equitable remedy with the result that the equitable remedy will be susceptible to being discharged in bankruptcy. For example, in some States, a judgment for specific performance may be satisfied by an alternative right to payment, *in the event performance is refused*; in that event, the creditor entitled to specific performance would have a "claim" for purposes of a proceeding under title 11.

124 Cong. Rec. 32393 (1978) (remarks of Rep. Edwards) (cited in *In re Udell*, 18 F.3d 403, 407 (7th Cir. 1994)) (emphasis added).

40.     Consistent with this clear mandate of Section 101(5), courts have held that a remedy not involving a "breach of performance" does not constitute a "claim." *See In re Skorich*, 482 F.3d 21, 26 (1st Cir. 2007) ("no breach of performance--for example, for failure to perform a contract--is involved in the present case and only equitable remedies for breach of performance are potentially claims under section 101(5)"); *In re Compagnone*, 239 B.R. 841, 845 (Bankr. D. Mass. 1999) (when "equitable rights . . . are not awarded 'for breach of performance,' but rather are awarded based upon the equities of the case," the rights "do not arise from a breach of performance by the debtor as required by 11 U.S.C. § 101(5)(B)").

41.     Here, BDO does not seek cancellation of the Engagement Letter and unwinding of its relationship with Le-Nature's based on a breach of performance by Le-Nature's. Rather, BDO's requested relief is based on the fact BDO was fraudulently induced into the agreement by Le-Nature's prior to formation. Thus, the equitable relief BDO seeks is not for a "breach of performance" on the part of Le-Nature's, and is therefore not within section 101(5). And in the event that it is determined that BDO has a right to the equitable relief it seeks in the

complaint, no "performance" by Le-Nature's would be necessary to effectuate such relief.

BDO's complaint merely seeks an unwinding of its relationship with Le-Nature's and requests

neither specific performance nor injunctive relief that would require action or inaction on

Le-Nature's part. For this reason as well, BDO has not asserted an impermissible "claim."

> **C.    BDO Has Asserted Only Claims For Injunctive Relief, Which Are By Definition Not "Claims"; Whether BDO Is Entitled To Such Relief Must Be Determined By The District Court**

42.    In its District Court Action, BDO has asserted <u>solely</u> claims for injunctive relief.

BDO can obtain that relief only if it can show that it does not have an adequate remedy at law

that could be satisfied by money damages. *See, e.g., Snyder v. Millersville Univ.,* 2008 WL

5093140, at *11 (E.D. Pa. Dec. 3, 2008) (party seeking permanent injunction must show, *inter*

*alia*, the "inadequacy of remedies available at law."). A party who is seeking or has already

obtained injunctive relief based on lack of an adequate remedy at law is simply not raising a

"claim." *See United States Commodity Futures Trading Commission v. NRG Energy, Inc.*,

457 F.3d 776, 780 (8th Cir. 2006) (party seeking injunctive relief is not filing a "claim");

*Kennedy v. Medicap Pharmacies, Inc.*, 267 F.3d 493, 498 (6th Cir. 2001) (when state law

provides for injunctive relief only upon showing of no adequate remedy at law, party seeking

injunctive relief is not raising a "claim"); *In re Brown*, 237 B.R. 740, 745 (Bankr. C.D. Cal.

1999) (no "claim" when party has obtained injunctive relief based on inadequate remedy at law

and irreparable harm); *In re Oseen*, 133 B.R. 527, 531 (Bankr. D. Idaho 1991) (equitable relief

serves a "markedly different purpose than damages, and imposition of an injunction will likely

not be available except where an award of money damages (i.e., a right to payment) is

inadequate.").

43.    By definition, then, BDO is not pursuing a "claim" in the District Court Action.

Moreover, whether BDO is in fact entitled to the relief it seeks can only be determined by the

court in the District Court Action after it has reviewed the facts and the law. Indeed, by virtue of its motion, the Trustee is attempting to have this Court decide the merits of BDO's claims, which is a wholly inappropriate request.

44. BDO respectfully submits that this Court should defer to Judge Cercone and the MDL proceedings for resolution of this issue. Indeed, the very purpose of the JPML's order was to "prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel, and the judiciary." *In re: Le-Nature's Inc. Commercial Litigation*, -- F.Supp.2d --, 2009 WL 971493 (JPML 2009).

45. As noted above, the Judge in the District Court Action has stayed that case pending the completion of the anticipated transfer of the matter to Judge Cercone. Once that stay is lifted, the Trustee is free to move to dismiss on grounds similar to those asserted here. *Rederford*, *supra,* 586 F.Supp.2d at 49 (dismissing a federal action on debtor's motion because the action was barred by the confirmation of a plan). Accordingly, there can be no prejudice to the Trustee by deferring his motion.[1]

---

[1] It should be noted that the Trustee has failed to cite a <u>single</u> case with a posture similar to the one before this Court – where a party has filed its causes of action only <u>in response</u> to a civil matter first commenced by the Trustee himself. BDO did not commence this dispute, the Trustee did by filing his arbitration demand. Accordingly, at the Trustee's own initiative, the respective rights of the Trust and BDO will be examined and ruled upon. All that BDO's federal filing did was to potentially change the forum of that dispute from the Arbitration to the MDL. The Trustee's argument would also prevent BDO from asserting *any* defenses against the Trustee in the Arbitration or otherwise, which plainly is not the law. *See In re KI Liquidation*, *Inc.*, 2007 WL 2917239, at *2 (Bankr. D. N.J. 2007) (confirmation plan injunction provisions do not bar "counterclaims or defenses asserted by a party <u>in a suit initiated by the Debtor itself</u>. … The Trustee would have the Court allow it to bring suits against parties but not allow the parties to defend themselves or assert counterclaims.") (emphasis added). Moreover, BDO's federal causes of action were not ripe until after the Trustee commenced his Arbitration. Until then, although the Trustee had threatened to bring a claim against BDO, there was no guarantee that it would in fact do so, and (to our recollection) the Trustee never stated on the record that he would choose arbitration as his preferred forum. The Trustee should not be allowed to benefit from his decision to withhold the commencement of his claim against BDO until after confirmation, and then use his own delay to justify the frustration of BDO's remedy. *C.f. In re Brown*, 237 B.R. at 744 (debtor should not be allowed to use bankruptcy law "to escape the consequences of his or her wrongdoing."). Finally, it was not until the Trustee filed his Wachovia Complaint -- <u>post</u>-Confirmation – that the Trustee formally confirmed the extent of the Le-Nature's fraud and that the fraud was well in place before BDO agreed to accept Le-Nature's as a client. Until that point, BDO, which does not have the access that the Trustee does to relevant witnesses, could not satisfy its own Rule 11 obligations in filing its federal claim. Indeed, BDO' s complaint in the District Court Action quotes extensively from the Wachovia Action. (*See* Motion Ex. D, at pp. 9-11)

### D. The Trustee's Remaining Arguments For Calling The District Court Action A "Claim" Are Meritless

46.     The Trustee's three remaining grounds for charging that BDO has asserted "claims" in the District Court Action may be quickly disposed of.  First, the Trustee notes that in a single instance in BDO's complaint, BDO describes its causes of actions as "claims."  (Motion at ¶ 27, *quoting* District Court Action at ¶ 9)  This absurd contention – that the use of the word "claim" in BDO's complaint was intended to be the equivalent of a Section 101(5) "claim" – is contrary to both common sense, and to Rule 8(a) of the Federal Rules of Civil Procedure, which requires a party to set forth a "claim for relief."

47.     Next, the Trustee asserts that BDO has raised "significant damage claims against the Trust" in the Arbitration.  (Motion at ¶ 17)  This is simply false.  BDO has not filed a counterclaim in the Arbitration.  The Trustee apparently is referring to a single statement made by BDO during the parties' unsuccessful mediation.  (Moving Affidavit of Christopher P. Johnson ("Johnson Aff.") ¶ 12)  A single statement made during settlement discussions hardly constitutes a "significant damage claim."  Moreover, by written agreement of the parties, all statements made during the mediation were to be strictly confidential and inadmissible for any purpose in any other proceeding.  *See* redacted Mediation Agreement, a true and correct copy of which is attached hereto as Exhibit G.  The Trustee's violation of this clear confidentiality agreement only shows his desperation in seeking to avoid his day of reckoning in federal court.[2]

---

[2]  The parties' confidentiality agreement in the mediation could not be clearer.  The parties explicitly agreed that the "entire mediation process is confidential," that "[a]ll statements made during the course of the mediation are privileged settlement discussions . . . and are inadmissible for any purpose in any legal proceeding," and that "[t]hese statements … will not be disclosed to third parties . . . ."  *See* Exhibit G.  Despite the plain mandate of this agreement, the Trustee's Motion purports to quote entire sentences from BDO's submissions in the mediation.  (Johnson Aff. ¶ 12)

But in any event, the Third Circuit in *Ben Franklin, supra,* specifically held that the fact that a party has asked for monetary relief is irrelevant as long as the equitable relief it also requests serves a "distinct remedial purpose[]." 186 F.3d at 306.

48.     Finally, the Trustee spends much of his motion arguing that BDO has somehow waived its rights by participating in the Arbitration. (Johnson Aff. at ¶¶ 5-15) This is both factually untrue and legally irrelevant. It is untrue because the Arbitration is in its infancy; indeed, as of the date of the filing of this opposition, a full panel has not even been appointed in the Arbitration. Moreover, BDO began to prepare the District Court Action promptly after the failure of the parties' initial mediation efforts. BDO was fully justified in trying to resolve the parties' differences amicably before filing suit, a path the courts routinely encourage. And BDO filed the District Court Action on the very day that the JPML granted MDL treatment of the Le-Nature's dispute, a point when it was clear that the federal courts had determined that all of the Le-Nature's actions should be addressed in a single forum in the Western District of Pennsylvania. The Trustee's argument is irrelevant because the Trustee's "enforcement" motion can be granted only if a court determines that all of the causes of action contained in the District Court Action are "claims" within the meaning of the Bankruptcy Code. If they are not, then any contention of undue delay must be resolved by the MDL court.

## II.     BDO HAS NOT INTERFERED WITH THE "PROPERTY" OF THE TRUST

49.     In what seems to be little more than an afterthought, the Trustee asserts that BDO's District Court Action "seeks to affect the Trust's rights in its property -- specifically, the Trust's right to arbitrate ... and is barred ... by the Confirmation Injunction." (Motion at ¶ 28) The Trustee cites absolutely no authority for this proposition, which would be absolutely inconsistent with the many cases cited above allowing a party to pursue equitable claims against

a debtor.  In any event, BDO is not seeking to deprive the Trust of its right to seek to bring claims against BDO.  The Trustee is free to bring his claims as counterclaims in the District Court Action.  That the Trustee would prefer to arbitrate rather than litigate his claims does not transform that preference into "property."  This is particularly so given that the Trustee is already litigating in the Western District of Pennsylvania, and consolidating the District Court Action with the existing MDL actions will lead to <u>less</u> work for the Trustee, not more.

### III.     A FINDING OF CIVIL CONTEMPT IS NOT WARRANTED

50.     Finally, even if this Court should choose to rule on, and grant, the Trustee's motion for purported "enforcement" of the Confirmation Order, it should decline the Trustee's request that BDO be subject to civil contempt.  The burden of proof for establishing contempt is high.  The moving party "must prove by clear and convincing evidence that [his adversary] violated the court's prior order."  *See Long Term Care Mgmt., Inc. v. VI/XII Collateral Trust (In re Nat'l Century Fin. Enterp., Inc)*, 342 B.R. 384 (Table), 2006 WL 620643, at *6 (6th Cir. BAP 2006). A bankruptcy court should not grant a contempt motion based on a technical violation of a plan injunction, where the injunction language in a confirmation order is not sufficiently specific and definite to warrant the imposition of sanctions.  *Monarch Life Insurance Co. v. Ropes & Gray (In re Monarch Capital Corp.)*, 173 B.R. 31 (D. Mass. 1994) (affirming bankruptcy court's conclusion that state court action was barred by confirmation order injunction, but reversing contempt order because injunction did not "describe in reasonable detail exactly what acts are forbidden"); *Long Term Care Mgmt., supra,* 2006 Bankr. LEXIS 328 at *18-19 (finding injunction language was not "definite and specific enough to support a finding of contempt").

51.     The Third Circuit in *Ben Franklin* found that the violation of a discharge injunction before it was not contemptuous because there was at least a "colorable argument" that the party's

assertion of a monetary claim did not violate the injunction. *In re Ben Franklin*, 186 F.3d at 309. Moreover, the First Circuit has specifically noted that the interpretation of Section 101(5)(B), the key section of the Code at issue on this motion, "is the subject of much controversy." *In re Skorich*, 482 F.3d 21, 26 (1st Cir. 2007). BDO had at the very least a "colorable argument" that its causes of action in the District Court Action were not "claims," particularly given the "controversy" regarding the interpretation of Section 101(5). Indeed, the Trustee has been unable to cite a <u>single</u> case where a response to the Trustee's own litigation tactics was somehow deemed to be a "claim." Moreover, given that the District Court Action has been stayed as a result of BDO itself giving notice of the potential "tag-along" action, the Trustee can hardly claim harm to the Trust. There is therefore no justification for a finding of contempt.

**CONCLUSION**

52.     For the reasons stated above, BDO respectfully requests that the Trustee's motion be denied, and the parties be allowed to resolve their dispute in the MDL pending in the Western District of Pennsylvania.

Dated:    April 23, 2009
          Pittsburgh, Pennsylvania

                                                  **LEECH TISHMAN FUSCALDO
         & LAMPL, LLC**
         Citizens Bank Building, 30th Floor
         525 William Penn Place
         Pittsburgh, PA  15219
         412.261.1600


         By:   /s/ David W. Lampl
                 David W. Lampl
                 PA ID No.:  28900

         - and -

**DLA PIPER LLP (US)**
Michael S. Poulos (admitted *pro hac vice*)
203 North LaSalle Street, Suite 1900
Chicago, IL  60601
312.368.4000

- and -

**DLA PIPER LLP (US)**
Thomas R. Califano (admitted *pro hac vice*)
Cary B. Samowitz (admitted *pro hac vice*)
1251 Avenue of the Americas, 27th Floor
New York, NY  10020-1104
212.335.4500

*Attorneys for BDO Seidman, LLP*

EAST\42423767.1