## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Case No. 06-25454 (TPA) |
| LE-NATURE'S , INC., *et al*., | Chapter 11 |
| Liquidating Debtors. | Substantively Consolidated |

MARC S. KIRSCHNER, THE LIQUIDATION
TRUSTEE OF THE LE-NATURE'S
LIQUIDATION TRUST,

           Movant,

      v.

K&L GATES LLP, SANFORD FERGUSON,
PASCARELLA & WIKER, LLP,
CARL A. WIKER, WACHOVIA CAPITAL
MARKETS, LLC n/k/a WELLS FARGO
SECURITIES, LLC, WACHOVIA BANK,
NATIONAL ASSOCIATION n/k/a WELLS
FARGO BANK, N.A., BDO USA, LLP, BDO
SEIDMAN, LLP, CIT GROUP/EQUIPMENT
FINANCING, INC., KRONES, INC.,
KRONES AG, VOLKER KRONSEDER,
HEINZ SOMMER, MARSHALL
FINANCIAL, INC., MARSHALL
INVESTMENTS CORPORATION, THE
POLLINGER COMPANY, INC., DONALD K.
POLLINGER, PAUL POLLINGER,
GREGORY J. PODLUCKY, JONATHAN E.
PODLUCKY, DAVID E. GETZIK, ROBERT
B. LYNN, ANDREW MURIN, JR., THE
MARSHALL GROUP, MARSHALL
BANKFIRST CORP., WILEY H. SHARP, III,
KRONES AKTIENGESELLSCHAFT, ERNST
& YOUNG, LLP, and HOUSTON
HARBAUGH, P.C.,

           Respondents.

**LIQUIDATION TRUSTEE'S MOTION FOR APPROVAL
OF SETTLEMENT AGREEMENT & RELEASE & COVENANT
NOT TO SUE WITH K&L GATES LLP AND SANFORD FERGUSON**

Marc S. Kirschner, in his capacity as Liquidation Trustee (the "Trustee") for the Le-Nature's Liquidation Trust (the "Trust"), moves this Court for approval of the Settlement Agreement & Release & Covenant Not to Sue annexed hereto as Exhibit A (the "Settlement Agreement"). In support thereof, the Trustee respectfully represents as follows:

## PRELIMINARY STATEMENT

1.      Subject to this Court's approval, the Trustee has agreed to settle his pending claims against K&L Gates LLP and Sanford Ferguson (the "K&L Parties"), after more than four years of extremely complex, costly and protracted litigation. As more fully explained below, the complexity and uncertainty of the legal claims, the continuing litigation costs, the K&L Parties' denial of any negligent conduct and the substance of their various defenses, and the Trust's finite resources all argue in favor of the settlement.

2.      This settlement exceeds the lowest range of reasonableness, in that it will, among other things, allow secured Class 1 claims to be fully paid, deficiency unsecured Class 4A claims to receive (for the first time) a substantial recovery, and general unsecured non-CIT claims to receive a distribution of approximately 4%. This settlement will also eliminate the burden and expense of further litigation against the K&L Parties. The Trustee believes that the settlement is the best outcome achievable given all the circumstances and is in the best interests of the Trust.

## FACTUAL BACKGROUND

### A.    Podlucky's "Equipment Financing Scheme"

3.      As this Court is aware, Le-Nature's, Inc. ("LNI"), was a Pennsylvania-based beverage company that was placed into bankruptcy on November 1, 2006. For several years prior to its bankruptcy, LNI's chief executive officer, Gregory Podlucky, and his fellow insiders

2

operated LNI as a form of "Ponzi" scheme, whereby new money was constantly raised to pay off ever-increasing debts to previous investors, thereby cultivating the illusion of a legitimate profit-making business.

4.      Podlucky's Ponzi scheme took several different forms.  Using wildly fraudulent financial statements that were given clean audit opinions by Ernst & Young LLP ("E&Y") and BDO Seidman LLP ("BDO"), Podlucky obtained hundreds of millions of dollars in high-yield debt and syndicated credit facilities from Wachovia Capital Markets, LLC n/k/a Wells Fargo Securities, LLC and Wachovia Bank, National Association n/k/a Wells Fargo Bank, N.A. (collectively, "Wachovia").

5.      A distinct but related component of Podlucky's Ponzi scheme was his "Equipment Financing Scheme."  In the Equipment Financing Scheme, Podlucky in 2004 planned what the Trustee asserts was a wholly unnecessary, "state-of-the-art" 500,000 square foot production facility for Phoenix, Arizona (the "Phoenix Facility").  Because LNI's reconstructed financial statements reflect that LNI's 2003 sales were only a paltry $8 million, LNI had no need for the Phoenix Facility.[1]  Rather, the Phoenix Facility served only as a vehicle by which Podlucky could double-finance high-end, custom-made equipment for the Facility (the "Phoenix Equipment") so he could skim $118 million off that double-financing.

6.      Podlucky's Equipment Financing Scheme had two distinct components.  First, Podlucky used fictitious "deposits" towards this future production facility as a means of masking his manipulation of LNI's financial statements.  Second, Podlucky determined that, by commissioning the construction of the Phoenix Facility, he could over-finance the equipment, skim the excess money off the top, use that money to pay other LNI debts (in classic Ponzi

---

[1] Indeed, LNI was not even using its Latrobe, Pennsylvania production facility anywhere near capacity, and LNI certainly had no need for a production facility in the Western United States, where LNI had meager, if any, sales.

scheme fashion), and loot some of the proceeds to support his lavish lifestyle.[2]   The Trustee maintains that the Phoenix Facility served no legitimate business purpose and, as a result, LNI unnecessarily incurred costs, expenses, and liabilities associated with the construction, operation, and maintenance of Podlucky's wholly unnecessary Phoenix Facility.

7.    On September 17, 2009, LNI former executives Gregory J. Podlucky, Jonathan E. Podlucky, Robert B. Lynn, and Andrew J. Murin, Jr., and an alleged equipment broker for LNI, Donald K. Pollinger, were indicted in connection with the fraud.  All of the indicted parties pled guilty except Mr. Lynn, who was convicted after a trial, and all are currently serving jail time for their participation in the fraud.

**B.    LNI's Bankruptcy and the Appointment of the Trustee**

8.    On November 1, 2006, four unsecured trade creditors filed an involuntary petition against LNI under chapter 7 of Title 11 of the United States Code.  On November 3, 2006, the Court converted the case to one under chapter 11.  On November 5, 2006, two of LNI's subsidiaries, Le-Nature's Holdings, Inc. and Tea Systems International, LLC (collectively with LNI, the "Debtors"), filed voluntary chapter 11 petitions.  On January 9, 2007, the Court appointed R. Todd Neilson as chapter 11 trustee for all of the (later) substantively consolidated cases.

9.    The Trust was established pursuant to the order (the "Confirmation Order") confirming the Second Amended Joint Chapter 11 Plan of the Liquidation of the Official Committee of Unsecured Creditors, the Ad Hoc Committee of Secured Lenders, and the Ad Hoc

---

[2] This financing also enabled Podlucky to steal millions of dollars from LNI for his own personal use.  Podlucky used diverted funds for jewelry purchases of more than $33 million, nearly $11 million for construction on an unfinished mansion, and more than $1 million for a collection of model trains.

Committee of Senior Subordinated Noteholders (the "Liquidation Plan") in the jointly-administered Cases.[3]

10.     The Confirmation Order approved a trust agreement (the "Trust Agreement") by which, among other things, the Trust succeeded to all property of the liquidated Debtors, including all claims of the former chapter 11 estates and the former Debtors.  The Liquidation Plan authorized the creditor-appointed Trustee, among other things, to prosecute and settle all causes of actions, subject to approval of the Liquidation Trust Oversight Board appointed under Section 7.02 of the Liquidation Plan.  Pursuant to Section 7.05(b) of the Plan, the Trustee must also obtain approval from this Court for the settlement of any claim where the amount sought exceeded $5 million.

### C.    The Trustee's Actions Against Other Defendants

11.     On October 30, 2008, the Trustee commenced an action in the Western District of Pennsylvania captioned *Kirschner v. Wachovia Capital Mkts. LLC, et al.,* No. 2:09-mc-00162-DWA (W.D. Pa. Oct. 30, 2008), which subsequently became part of the *In re Le-Nature's, Inc. Commercial Litigation* Multi-District Litigation, MDL No. 2021 (the "MDL Action").  In the MDL Action, the Trustee asserted claims against Wachovia; Marshall Financial Inc. and Marshall Investments Corporation (the "Marshall Parties"); Krones A.G., Krones Inc., and certain officers of each (the "Krones Parties"); The CIT Group/Equipment Financing, Inc. ("CIT"); The Pollinger Company, Inc., Donald K. Pollinger and Paul Pollinger (collectively, "Pollinger"); and former LNI executives Gregory Podlucky, Jonathan Podlucky, David E. Getzik, Robert B. Lynn, and Andrew J. Murin, Jr.

---

[3] Undefined capitalized terms used herein have the same definitions as in the Settlement Agreement and in the Liquidation Plan.

12.     In addition to the MDL Action, the Trustee commenced proceedings against LNI's former auditors.  Specifically, on October 29, 2008, the Trustee asserted claims against BDO in an arbitration under the auspices of the American Arbitration Association (the "BDO Arbitration").   Shortly thereafter, on October 31, 2008, the Trustee commenced an arbitration against E&Y under the auspices of the International Institute for Conflict Prevention & Resolution ("CPR") (the "E&Y Arbitration").     On June 9, 2011, the panel in the E&Y Arbitration issued an award in favor of E&Y (the "E&Y Decision").   Among other things, the E&Y Decision held that (i) the Trustee's tort claims were barred by the statute of limitations; (ii) the Trustee had not proven his breach of contract claim; (iii) the Trustee's claims were barred by the doctrines of *in pari delicto*/contributory negligence; and (iv) the Trustee did not prove a valid theory of damages.

**D.     The K&L Action**

13.     On September 9, 2009, the Trustee commenced an action in the Court of Common Pleas of Allegheny County, Pennsylvania against the K&L Parties, Pascarella & Wiker LLP ("P&W"), and Carl A. Wiker ("Wiker"), a P&W partner (the "K&L Action") in connection with their respective roles in an investigation in 2003 as counsel to a special committee of LNI's board of directors after three senior LNI financial officers resigned.   In the K&L Action, the Trustee asserted claims for professional negligence, breach of contract, breach of fiduciary duty, negligent misrepresentation and vicarious liability for the separate alleged negligence of P&W and Wiker (the "P&W Parties") against the K&L Parties, and claims for negligent misrepresentation and breach of contract against the P&W Parties.

14.    On December 28, 2010, Judge Wettick of the Court of Common Pleas issued an order dismissing all of the Trustee's claims against all defendants in the K&L Action (the "Court of Common Pleas Decision").[4]  The Trustee timely appealed.

15.    More than a year after Judge Wettick dismissed the Trustee's claims, on May 14, 2012, the Superior Court of Pennsylvania reversed the Court of Common Pleas Decision, and remanded the case for further proceedings (the "Superior Court Decision").[5]

16.    The K&L Parties filed a petition seeking leave to appeal the Superior Court Decision with the Pennsylvania Supreme Court; that motion was denied on April 24, 2013.[6]

17.    On or about July 3, 2013, the K&L Parties filed a 141-page Answer to Amended Complaint, New Matter, and Counterclaim (the "K&L New Matter"), along with 11 exhibits.  In the K&L New Matter, the K&L Parties asserted 17 defenses to the Trustee's claims, including lack of privity, collateral estoppel, statute of limitations, contributory negligence, assumption of risk, *in pari delicto*, unclean hands, inequitable conduct, illegality, no legally recoverable damages, superseding cause, lack of proximate cause, failure to mitigate damages, comparative fault of settling defendants, ratification, acquiescence and consent, and equitable estoppel.  The P&W Parties also filed an Answer and New Matter on or about July 3, 2013 (the "P&W New Matter").  The K&L Action will proceed against the P&W Parties.

18.    On October 4, 2013, the Trustee filed a 135-page reply to the K&L New Matter, and a 37-page reply to the P&W New Matter, both accompanied by five exhibits.

---

[4] The Court of Common Pleas Decision is annexed hereto as Exhibit B.
[5] The Superior Court Decision is annexed hereto as Exhibit C.
[6] The order denying leave to appeal is annexed hereto as Exhibit D.

**E.  The Trustee's Settlements with Wachovia, BDO,**
**The Krones Parties, CIT and the Marshall Parties**

19.    This Court approved the Trustee's settlements with Wachovia and BDO on September 20, 2011.  Those settlements recovered for the Trust $38 million from Wachovia and $12 million from BDO, and also resulted in the release of Wachovia's and BDO's respective claims against the Estate, which exceeded $26 million.   Subsequently, the Trust made distributions to the creditors of the Estate with the settlement recoveries.   As the Trustee indicated at that time, the Trustee withheld $9 million of those settlement proceeds to finance litigation of his remaining claims against, *inter alia*, the Krones Parties, CIT, the Marshall Parties, and the K&L Parties.

20.    On December 6, 2012, the Bankruptcy Court for the Western District of Pennsylvania entered an order approving settlement agreements and releases between the Trustee and the Krones Parties and the Trustee and CIT.  The Trustee's settlement with Krones recovered $30 million for the Trust.  Pursuant to the Trustee's settlement with CIT, CIT reduced its claim against the Trust by approximately $20 million, and postponed distribution on the remaining claim of about $119 million until an additional $25 million in gross additional proceeds (beyond the $30 million from the Krones settlement) was received by the Trust.[7]

21.    On December 9, 2013, this Court approved the Trustee's settlement with the Marshall Parties for $ 1 million.

**F.  The Trustee's Settlement with K&L**

22.    In November 2013, the Trustee and the K&L Parties reached an agreement to participate in a mediation with Professor Eric Green of Resolutions, LLC, a highly regarded and leading mediator with substantial experience handling high stakes and complex commercial

---

[7] In the Trustee's business judgment, the CIT settlement was worth about $2 million to the Trust.

cases throughout the country.  The mediation was thereafter held on January 8, 2014, in Miami.

The parties submitted detailed confidential mediation statements to Mr. Green on December 20,

2013.

23.    Prior to the scheduled mediation, on December 9, 2013, counsel to the K&L

Parties delivered a draft 49-page motion for judgment on the pleadings (the "Motion for

Judgment on the Pleadings"), which counsel advised that the K&L Parties intended to file in the

event the mediation was unsuccessful, and that the K&L Parties intended to annex to its

mediation statement.  In the Motion for Judgment on the Pleadings, the K&L Parties argued,

*inter alia*, that (i) the Trustee's tort claims are barred by the statute of limitations; (ii) as a result

of the E&Y Decision, the Trustee is collaterally estopped from arguing that the limitations period

was tolled; (iii) the contributory negligence of LNI is fatal to all of the Trustee's claims, and the

Trustee is collaterally estopped by the E&Y Decision from arguing to the contrary; and (iv) the

Trustee's claims are barred by superseding causes, namely, the conduct of defendants in the

Trustee's other cases.

24.    On December 20, 2013, the Trustee submitted a 40-page mediation statement,

accompanied by 29 joint exhibits, in which the Trustee, among other things, addressed the

arguments made by the K&L Parties in their Motion for Judgment on the Pleadings.  The K&L

Parties submitted a 27-page mediation statement.

25.    On January 8, 2014, the Trustee and representatives of the K&L Parties, along

with counsel, participated in an all-day mediation session for in excess of 10 hours.  At the

conclusion of the mediation, a settlement was reached, and a binding term sheet was executed.

26.    The Trustee's Settlement Agreement with the K&L Parties is attached to this

motion as Exhibit A.  The parties conditioned the effectiveness of the Settlement Agreement on:

(1) approval by this Court of the Settlement Agreement and through the entry of a bar order (the

"Bar Order," substantially in the form attached hereto as Exhibit E) that will become final when

it is no longer subject to appeal;[8] and (2) entry of an Order of Discontinuance ("Discontinuance")

by the Common Pleas Court of Allegheny County, Pennsylvania, to dismiss all Claims asserted

by the Trustee against the K&L Parties with prejudice, which Discontinuance will become final

when it is entered and the time to appeal therefrom has expired, or if any appeal is taken, when

the Discontinuance has been upheld and affirmed in all respects and is not subject to any further

appeal or review.

27.    The material terms of the Settlement Agreement are as follows:[9]

- <u>Consideration</u>:  K&L Gates will cause to be paid $23,750,000 to the Liquidation Trust within 10 days after the Bar Order and the Discontinuance have become final and non-appealable and the satisfaction of other conditions precedent stated in the Settlement Agreement.

- <u>The Mutual Releases</u>:  The Trustee (for himself in his capacity as Trustee and for the Trust, the Liquidation Trust Oversight Board, and all persons claiming through the Trustee in his capacity as Trustee, and for his agents, successors and assigns), on the one hand, and the K&L Parties, on the other, will provide mutual releases arising out of and relating to the K&L Parties' relationship with LNI, including claims arising out of or relating to the K&L Action.

- <u>Effectiveness of the Settlement Agreement, the Bar Order and *Griffin* Releases</u>:  Subject to certain conditions precedent being met, the Settlement Agreement will become effective.  One of the conditions precedent is obtaining from this Court the Bar Order, no longer subject to appeal, fully approving and authorizing the Settlement Agreement and enjoining, subject to the specific provisions of the Bar Order, all of the above-captioned Respondents, the other defendants in the actions and related arbitration proceedings initiated by the Trustee, and all other persons and entities, whether the Trustee has asserted claims against them or not (herein

---

[8] The Bar Order is substantially similar in form to other Bar Orders, which were previously approved by this Court in the Le-Nature's bankruptcy.  <u>See</u>, <u>e.g.</u>, Order Approving Settlement Agreement and Releases Between Marc S. Kirschner, in his Capacity as Liquidation Trustee of the Le-Nature's Liquidation Trust, and the Marshall Parties and Barring Claims Against the Marshall Parties for Indemnity and Contribution (Docket No. 3633, filed December 9, 2013).

[9] This description is a summary of the principal terms of the Settlement Agreement.  Reference is made to the entire Settlement Agreement for a full recitation of its terms and conditions.  To the extent this description is inconsistent with the Settlement Agreement, the Settlement Agreement controls.

collectively the "Other Defendants"), from asserting any claims for contribution or indemnity against either or both of the K&L Parties in any court or forum.

- The Trustee agrees that any judgment, award or other recovery he may obtain against any of the Other Defendants arising out of or relating to any one or more of the "Events/Disputes" (as defined in the Settlement Agreement) shall be reduced to the extent of the *pro rata* or percentage share of causal negligence, responsibility, comparative causation or fault of the K&L Parties, whether or not such Releasees were in fact joint tortfeasors, so that there can be no right of contribution or indemnification by such other non-settling persons, firms or entities against either or both of the K&L Parties under any conceivable theory.

- To the extent necessary to realize the objectives of eliminating any right of contribution or indemnity against the K&L Parties and permitting the K&L Parties to obtain a dismissal of any claims for contribution or indemnity against them, the parties intend the releases to be construed as "*Griffin*" releases.[10]

- There is no admission of liability or wrongdoing by the K&L Parties.

28.    In deciding to enter into this Settlement Agreement with the K&L Parties, the Trustee considered, among other factors: (i) the K&L Parties' denial of any negligent conduct and the substance of their various defenses; (ii) the risks and expenses of protracted litigation; and (iii) the benefits conferred to creditors of the Estate by resolving litigation expeditiously.

29.    As of the date of this motion, a trial date has not been set in connection with the Trustee's claims against the K&L Parties, and the K&L Parties had represented that they would file their Motion for Judgment on the Pleadings if a settlement was not reached.    Absent settlement, and assuming, arguendo, the K&L Parties anticipated Motion for Judgment of the Pleadings were denied, the parties would have soon engaged in further discovery, and the K&L Parties represented that they intended to take extensive deposition discovery.    Moreover, briefing of the anticipated Motion for Judgment on the Pleadings would have been enormously complex and expensive and, if the Motion was decided against the Trustee, would have disposed of his claims. The K&L Parties also indicated that they intended to file a motion for summary judgment

---

[10] A "*Griffin*" release is a release wherein the settling defendants concede joint tortfeasor liability in order for the nonsettling defendants to have a right of a setoff.

following discovery (if the Motion for Judgment on the Pleadings was unsuccessful).  Thus, absent settlement, there was a risk that the Trust would have had to oppose both motions for Judgment on the Pleadings and for Summary Judgment, each of which could have resulted in separate appeals, adding to costs of litigation and substantial delay.

30.    As the Trustee indicated when moving for settlement of the claims against Krones and CIT, he had expended to that point over $33 million in legal and professional fees in prosecuting his claims in the MDL Action, the BDO Arbitration, the E&Y Arbitration, and the K&L Action.  Total fees and expenses through December 31, 2013 were approximately $37 million of which approximately $5 million was incurred in the litigation against the K&L Parties. Assuming approval of the settlement with K&L Gates, recoveries from all claims pursued by the Trust will exceed $125.3 million.

31.    Without a settlement with the K&L Parties, the Trustee and his counsel estimate that the continued prosecution of the Trustee's claims against the K&L Parties may exceed $5 million in additional litigation expenses in connection with conducting deposition and expert discovery, engaging in motion practice, including the K&L Parties' Motion for Judgment on the Pleadings and summary judgment motion practice, and preparing for and conducting an enormously complex trial in Pittsburgh, Pennsylvania.  In addition to the complexities and risks involved in proving the Trustee's claims against the K&L Parties at trial, the award of any damages against the K&L Parties could have presented an additional complex trial issue, requiring a determination of the allocation of fault as between the K&L Parties and other joint tortfeasors, including other settling defendants, resulting in further delay and added cost and unpredictability.

32.    In the Trustee's business judgment, this settlement reasonably represents the fair value of the Trustee's claims.  Moreover, pursuant to Section 7.05(b) of the Plan, the Trustee has obtained approval of the Liquidation Trust Oversight Board for the terms of this settlement.

## JURISDICTION AND VENUE

33.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b) (2012).

34.    This Court has exclusive jurisdiction under the Confirmation Order and Liquidation Plan "to approve, as may be necessary or appropriate, any Claims settlement entered into or offset exercised by the Liquidation Trust."  Liquidation Plan § 12.01(s); Confirmation Order ¶ 32.  Indeed, pursuant to Section 7.05(b) of the Plan, the Trustee is required to obtain approval from this Court for this settlement, because the amount sought in the claims exceeded $5 million.

35.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409 (2012).

## BASES FOR RELIEF

## THE SETTLEMENT AGREEMENT IS FAIR, EQUITABLE, AND IN THE TRUST'S BEST INTERESTS

**A.    Legal Standard**

36.    By this Motion, the Trustee seeks entry of an order, pursuant to Fed. R. Bankr. P. 9019 and the Plan, approving the Settlement Agreement.  Approval of a proposed settlement is within the "sound discretion" of the bankruptcy court.  *Key3Media Group, Inc. v. Pulver.com, Inc. (In re Key3Media Group, Inc.)*, 336 B.R. 87, 92 (D. Del. Bankr. 2005).  Courts generally defer to a trustee's business judgment where there is a legitimate business justification for the trustee's decision.  *Meyers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996); *see also In re Still*, 444 B.R. 520, 523 (E.D. Pa. Bankr. 2010).

37.    Here, the Trustee, Marc S. Kirschner, has substantial experience dealing with complex litigations such as the claims against the K&L Parties.  Mr. Kirschner spent most of his 30-year career as an attorney in private practice, specializing in bankruptcy and reorganization, with a heavy emphasis on complex bankruptcy litigation.  From 1987 through January 25, 2001, he was the head of the Bankruptcy and Restructuring Practice, and from January 1, 1997, the Business Practice Group, in the New York office of the global law firm Jones Day LLP.   In addition to serving as Trustee of the Trust, Mr. Kirschner also is the Liquidation Trustee for the SNTL Litigation Trust (formerly, Superior National Insurance Group), the Litigation Trustee for matters arising from the Refco Inc. bankruptcy, and the Litigation Trustee for the Tribune Litigation Trust.

38.    Here, the Trustee believes, in the sound exercise of his business judgment, that the settlement for $23.75 million is in the best interests of the Estate and its creditors, given the continued risk, delay and expense involved in litigating the claims against the K&L Parties.

39.    In deciding whether Fed. R. Bankr. P. 9019 is satisfied, the Court must determine whether "the compromise is fair, reasonable, and in the best interest of the estate."  *See Fry's Metal's, Inc. v. Gibbons (In re RFE Indus., Inc.)*, 283 F.3d 159, 165 (3d Cir. 2002).  The Third Circuit in *In re Martin* set forth the following four factors for this Court to consider when approving a settlement:  (i) the probability of success; (ii) the likely difficulties in collection; (iii) the complexity of the litigation, and the expense, inconvenience and delay necessarily attending it, and (iv) the paramount interest of the creditors (collectively, the "*Martin* Factors"). 91 F.3d at 393.  The Trust submits that the first, third and fourth factors are plainly established here; the second factor—likely difficulties in collection—is not a relevant factor, at least with

14

respect to the K&L Parties, given the size and apparent health of the law firm.  The Settlement

Agreement here satisfies the relevant *Martin* Factors and, thus, should be approved by this Court.

**B.**    **The Settlement with the K&L Parties Satisfies the *Martin* Factors**

    **1.**    **The First *Martin* Factor Favors Settlement**

40.    Under the first *Martin* factor, this Court must consider the probability of success

in litigating the claims being settled pursuant to the Settlement Agreement.  In doing so, the

Court's task is "not to decide the numerous questions of law and fact," but rather "to canvass the

issues and see whether the settlement 'fall[s] below the lowest point in the range of

reasonableness.'"  *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983); *In re W.R. Grace &*

*Co.*, 475 B.R. 34, 78 (D. Del. 2012); *In re Penn. Truck Lines,* 150 B.R. 595, 601 (E.D. Pa. 1992).

Although the Trustee believes that he has viable claims against the K&L Parties, the Trustee

recognizes that, in addition to significant further costs, there are factual and legal uncertainties in

this litigation that pose certain risks, including the risks posed by reasoning of the panel in the

E&Y Arbitration.

41.    Given these risks, the Trustee determined, with an eye towards maximizing

creditor recoveries, in light of finite resources and mounting costs, that entry into the mediated

settlement is an exercise of sound business judgment.  The costs of deposition and expert

discovery, motion practice, trial, and a myriad of other known and unforeseen costs associated

with such a complex litigation guided the Trustee to this sound decision.

    **2.**    **The Complexity, Expense and Uncertainty**
        **Of the Litigation At Issue Favor Settlement**

42.    The third *Martin* Factor requires this Court to weigh the complexity of the case,

as well as the expense, inconvenience and delay of pursuing litigation.  *See In re Nutraquest,*

*Inc.*, 434 F.3d 639, 646 (3d Cir. 2006); *In re W.R. Grace & Co.*, 475 B.R. at 78.  In weighing the

15

complexities of the litigation, courts have considered, among other things, "the number of parties, the various theories of recovery, and the factual record required to support those theories." *Meisel v. Armenia Coffee Corp. (In re Hudson's Coffee, Inc.)*, No. 05-60470 (NLW), 2008 Bankr. LEXIS 2994, at *9 (D.N.J. Bankr. Oct. 31, 2008); *In re W.R. Grace & Co.*, 475 B.R. at 78.

43. The claims against the K&L Parties are enormously complex, as evidenced by the fact that (i) the Trustee is relying on complex theories of recovery against the K&L Parties; (ii) a vast factual record is necessary to support the Trustee's claims, as evidenced by the over 9.8 million pages produced in the MDL Action and the approximately 100 depositions that have been taken to date in the MDL Action, all of which would be used in the K&L Action; and (iii) prosecution of the Trustee's claims will require several experts knowledgeable on, among other things, general accounting privileges, forensic accounting, uncovering fraud in financing transactions, equipment leasing, beverage industry standards, professional standards of care and damages. *See, e.g., In re Lee Way Holding Co.*, 120 B.R. 881, 901 (S.D. Ohio Bankr. 1990); *In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 263 F.R.D. 226, 239 (E.D. Pa. 2009). Moreover, the Trustee anticipates that the K&L Action will still require (i) further fact discovery, including depositions and the production and/or review of additional documents; (ii) expert discovery; (iii) opposing K&L's Motion for Judgment on the Pleadings; (iv) extensive summary judgment motion practice; (v) a lengthy and costly jury trial in the Pennsylvania court; and (vi) possible appeals. In short, additional litigation of the claims against the K&L Parties would result in the Trustee's expenditure of millions of additional dollars with no guarantee of financial return for the Trust. While the Trustee has made every reasonable effort to contain the

increasing costs to the Estate, a continued prosecution of the claims against the K&L Parties in light of these factors will result in substantial increased costs.

44.    Through December 31, 2013, the Trustee has incurred over $5 million dollars in legal and professional fees pursuing (and resolving) his claims against the K&L Parties, and has estimated with his counsel that the cost of continuing his claims against the K&L Parties could exceed an additional $5 million.    These considerations all favor approval of the Trustee's business judgment in entering into the proposed Settlement Agreement with the K&L Parties. *See, e.g., In re Nw. Corp.*, No. 03-12872 (KJC)**,** 2008 Bankr. LEXIS 1982, at *21 (D. Del. Bankr. July 10, 2008).

### 3.    The Settlement Is In The Paramount Interest Of The Estate's Creditors

45.    This Court should endorse the Trustee's business judgment in entering into the Settlement Agreement with the K&L Parties because it is in the "paramount interest of creditors." *In re Martin*, 91 F.3d at 393.    The Settlement Agreement (i) provides additional recoveries to creditors, (ii) eliminates the burden and expense of further litigation with the K&L Parties; (iii) eliminates the risk of further litigation or a possible change in governing law; and (iv) enables the Trustee to continue his litigation of valuable claims against other defendants. *See, e.g., In re Hudson's Coffee, Inc.*, 2009 U.S. Dist. LEXIS 52239, at *9; *DeBenedicts v. Truesdell (In re Global Vision Prods. Inc.),* 09 Cv. 374 (BSJ)**,** 2009 U.S. Dist. LEXIS 64213, at *14-15 (S.D.N.Y. July 14, 2009).    The approval of this settlement will allow secured Class 1 claims to be fully paid, deficiency unsecured Class 4A claims to receive (for the first time) a substantial recovery, and general unsecured non-CIT claims to receive a distribution of approximately 4%.    The only remaining litigation after the approval of this settlement will be the Trustee's claims against the P&W Parties and, aside from those discrete outstanding claims, after

receipt of anticipated forfeiture funds from the United States Attorneys' Office, this case will be closed.

46.    In addition to agreeing to dismiss and release his claims, the Trustee has agreed to seek approval for a so-called *"Griffin* release" and Bar Order.  The Bar Order here should be approved because it ensures that the K&L Parties get the full benefit of their bargain, *i.e.*, that they cannot be held liable a second time on account of settled liability.  Indeed, courts in the Third Circuit have endorsed the use of bar orders in complex, multi-party litigation as necessary to facilitate and foster settlement.  *See, e.g., Eichenholtz v. Brennan*, 52 F.3d 478, 486 (3d Cir. 1995) (affirming bars on indemnity and contribution claims and holding that, "[i]n cases involving multiple defendants, a right to contribution inhibits partial settlement.  Therefore, in order to encourage settlement in these cases, modern settlements increasingly incorporate settlement bar orders into partial settlements"); *Whyte*, 2010 Bankr. LEXIS 4160, at *15-20 (settlement's contribution bar was fair because it "recognize[d] that state law setoff rights may exist, but [left] the determination for the appropriate court at the proper time").  Moreover, the proposed Bar Order echoes the spirit of Pennsylvania's Uniform Contribution Among Tort-feasors Act, 42 Pa.C.S. § 8326 (2012) ("A release by the injured person of one joint tort-feasor, whether before or after judgment, does not discharge the other tort-feasors unless the release so provides, but reduces the claim against the other tort-feasors in the amount of the consideration paid for the release or in any amount or proportion by which the release provides that the total claim shall be reduced if greater than the consideration paid.")  Because the Trustee believes that the consideration it will receive under the Settlement Agreement is fair and above the lowest point in the range of reasonableness, it is also fair and reasonable to reduce any subsequent litigation judgment against the Other Defendants (as defined in the Settlement Agreement) by

any proportionate fault of the K&L Parties. *See Whyte v. Kiviston (In re Semcrude, L.P.)*, No. 08-11525 (BLS), 2010 Bankr. LEXIS 4160, at *8 (D. Del. Bankr. Nov. 19, 2010) (jurisdiction exists because "[c]onsideration of the [contribution bar order] constitutes a 'core proceeding' under 28 U.S.C. § 157(b)(2)(A) and (G)"); *Munford v. Munford, Inc. (In re Munford, Inc.)*, 97 F.3d 449, 454-55 (11th Cir. 1996) (holding that 11 U.S.C. § 105(a) provides the "bankruptcy court [with] legal authority to enter the order barring the non-settling defendants from asserting claims of contribution and indemnity against" the settling defendant); *see also Romagosa v. Thomas*, No. 6:06-cv-301-Orl-19JGG, 2006 U.S. Dist. LEXIS 50629, at *15 (M.D. Fla. July 25, 2006); *In re Palm Beach Fin. Partners., L.P.*, No. 09-36379-BKC-PGH, 2010 Bankr. LEXIS 5638, at *19-20 (S.D. Fla. Bankr. Oct. 21, 2010); *In re Adler*, No. 09-34791-BKC-RBR, 2010 Bankr. LEXIS 3001, at *17-20 (S.D. Fla. Bankr. Sept. 16, 2010).

47.     Finally, the Trustee is the creditor-selected administrator of the Trust in whom the creditors have placed their confidence to exercise business judgment that will reasonably benefit the creditors, based on the facts and law as they stand, through maximizing the size of the Trust. The Trustee is convinced that the Settlement Agreement with the K&L Parties is the best way to liquidate the Trust's claims against the K&L Parties in an expeditious, cost effective manner. *See, e.g., Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 465 (2d Cir. 2007). Indeed, courts have repeatedly approved settlement agreements where, as here, they were the product of a good faith negotiation overseen by a mediator. *See Hall v. AT&T Mobility LLC*, No.: 07-5325 (JLL)**,** 2010 U.S. Dist. LEXIS 109355, at *25-26 (D.N.J. Oct. 13, 2010); *In re Philips/Magnavox TV Litig.*, No.: 09-3072 (CCC)**,** 2012 U.S. Dist. LEXIS 67287, at *30-31 (D.N.J. May 14, 2012).

48.     Accordingly, the Trustee, acting for the Debtors' creditors, respectfully requests that this Court approve the Settlement Agreement, as it is reasonable, fair, equitable, and in the best interests of the Trust and its creditors.

49.     With the settlement of the claims against the K&L Parties, the only remaining claims being pursued by the Trustee are his claims against the P&W Parties in the K&L Action. If the Trustee is unable to settle his claims against the P&W Parties, the Trustee anticipates promptly proceeding with such remaining claims.   In the event that the P&W Parties do not consent to the Pennsylvania State Court's entry of an Order of Discontinuance of the K&L Action, the Trustee shall seek leave of the Pennsylvania State Court pursuant to Pennsylvania Rule 229, with the support of the K&L Parties, to obtain the court's entry of the Order of Discontinuance.

## NOTICE

50.     Notice of the hearing on this Motion and the relief requested in this Motion has been provided by the Trustee, by facsimile, overnight courier or hand delivery, to:  (i) the U.S. Trustee; (ii) counsel to the K&L Parties; (iii) all Respondents, and (iv) all parties requesting notice pursuant to USCS Bankruptcy R. 2002 (2012).  The Trustee submits that such notice is sufficient, and that no further notice of the relief requested in the Motion need be given to any party.

## NO PRIOR REQUEST

51.     No prior request for the relief sought herein has been made to this or any other Court.

*Remainder of Page Intentionally Left Blank*
*Signature Page Follows*

## <u>CONCLUSION</u>

For the foregoing reasons, the Trustee respectfully requests that the Court enter an order (a) approving the terms of the Settlement Agreement in the forms annexed hereto and barring all claims against the K&L Parties for indemnity or contribution, and (b) granting the Trustee such other or further relief as is just and proper.

Dated:  January 24, 2014            **SWEETWATER LAW, LLC**

By:  _____ */s/ James H. Joseph* _____
James H. Joseph (PA ID 82087)
PO Box 45
Sewickley, PA 15143
Telephone: (412) 528-1010

BROWN RUDNICK LLP
Sigmund S. Wissner-Gross
7 Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile:  (212) 209-4801

*Attorneys for Marc S. Kirschner, Liquidation Trustee of the Le-Nature's Liquidation Trust*